## AMERICAN OIL & REFINING CO. v. CORNISH et al.

No. 23757.   Sept. 17, 1935.

Bliss Kelly, for plaintiff in error.

C. W. King and W. C. Hall, for defendants in error.

BUSBY, J.   This action was commenced in the district court of Oklahoma county on April 2, 1932, by the American Oil & Refining Company, as plaintiff, against Melvin Cornish and others, as members of the Oklahoma Tax Commission, and the Oklahoma Tax Commission, as defendants. The plaintiff seeks to recover the sum of $314.95, the same being the gross production tax on one-fourth of seven-eighths of oil produced by the plaintiff on public park lands belonging to Oklahoma City, Okla., during the months of August September, October, November, and December, 1931, and January of 1932. The sum sought to be recovered had previously been paid under protest by the plaintiff to the defendants. The plaintiff also seeks injunctive relief against future collection of similar taxes.

The trial court sustained a motion to dismiss the action, which was in reality a demurrer to the petition, and entered its order dismissing the action. The case is brought to this court for review by the plaintiff, which appears herein as plaintiff in error. We shall continue to refer to the parties as plaintiff and defendants, respectively, when not otherwise designated.

No question of procedure is presented by either of the parties hereto. The plaintiff urges that "the oil involved herein is the property of the city of Oklahoma City, a municipal subdivision of the state of Oklahoma, and is exempt from taxation." The legal basis for the argument advanced is section 6 of art. 10 of the Oklahoma Constitution, which provides in part:

"All property of the United States, and of this state, and of counties and of municipalities of this state * * * shall be exempt from taxation. * * *"

The assertion that the oil involved herein is the property of Oklahoma City is based upon the provisions of the lease contract under which the plaintiff is producing oil on the property in question. The pertinent and controlling provisions of the lease are:

"That said lessor, for and in consideration

of the sum of eighteen thousand ($18,000) dollars cash in hand paid, the receipt of which is hereby acknowledged and the **further payment of the sum** of twenty thousand ($20,000) dollars to be paid in oil, which may be produced from the said property, said lessor to receive its oil payment out of one-fourth of the first oil produced and marketed from said property. * * *

"To deliver to the credit of lessor, free of cost in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises. * * *"

The last-quoted provision concerns the one-eighth royalty interest of the city and is not directly involved in this action for the reason that no effort has been made by the Tax Commission to collect gross production tax thereon. The plaintiff asserts that both of the contract provisions have the same practical effect as far as the gross production tax is concerned; that both operate to vest title to designated fractional portions of the oil produced in the city immediately upon the reduction of the oil to possession, and that, being the property of city, neither of these fractional portions of the oil produced is subject to gross production tax.

We may assume, without the necessity of deciding, that the position of the plaintiff is sound as to the one-eighth royalty interest; that oil and gas in this state is not the subject of ownership in place and is not conveyed by the lease to the lessee; that the provision of the lease operates to vest the title to one-eighth of the oil produced in the city immediately when the oil is reduced to possession (Rich v. Doneghey et al., 71 Okla. 204, 177 P. 86; Homestake Exploration Corporation v. Schoregge [Mont.] 264 P. 388); that the gross production tax, being in lieu of ad valorem tax (section 12434, O. S. 1931), is a property tax (State v. Gillespie, 81 Okla. 103, 197 P. 508; In re Skelton Lead & Zinc Co.'s Gross Production Tax for 1919, 81 Okla. 134, 179 P. 495), and falls within the exemption created in favor of municipalities by section 6 of art. 10 of the Constitution, supra. (See for discussion City of Ardmore v. State ex rel., 168 Okla. 316, 32 P. (2d) 728.)

These assumptions do not, however, lead us to the conclusion that the same result should obtain with reference to the one-fourth of seven-eighths interest which is the subject of this litigation. The two provisions of the lease are obviously distinguishable.

That portion of the lease relating to the payment of an additional $20,000 "in oil" was not, in our judgment, intended to vest in the lessor title to the one-fourth of seven-eighths of the oil produced, but, on the contrary, was intended to provide a contingency upon which the lessee should become liable to pay $20,000 additional bonus for the lease, the payments to be made in money by the lessor **"out of one-fourth of the first oil produced and marketed."** Under this contract no part of the seven-eighths working interest in the oil produced ever became the property of the city. It is true that the parties might have chosen more appropriate language to express their intent, and elements of uncertainty might thereby have been eliminated. However, in view of the nature of the contract, we deem the language sufficiently clear to justify the conclusion herein announced.

We deem it unnecessary to indulge in a discussion of the numerous decisions cited by the respective parties to this litigation which deal only remotely with the question under discussion. Our decision rests on the meaning of the language contained in the contract. We are concerned with what the parties did agree, not with what they could have agreed.

The plaintiff also urges that "an oil company producing oil from property belonging to a municipal corporation acts as an instrumentality of the government and is exempt from taxation by reason thereof."

In support of this contention plaintiff cites Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, and Gillespie v. Oklahoma, 257 U. S. 501 and other cases decided by the Supreme Court of the United States, in which it was held in substance that in Oklahoma an oil and gas lease on public or Indian lands may constitute an instrumentality of the state or national government through which such government exercises its functions, and that in recognition of our "constitutional system of dual government" (state and national), each supreme within its sphere such instrumentality of one government is not subject to taxation by the other.

Those decisions are not applicable to the case at bar because of the vivid distinction between the relationship of the governments involved. While the state and national governments are each sovereign within their respective spheres, municipalities are merely governmental subdivisions of the sovereign state. They derive their power from and are subject to the control of the state. Such control may be exercised through the Legislature unless forbidden in some particular

respect by constitutional provision. Thus, as applied to taxation, their property or the property of the instrumentalities or agencies through which they conduct their governmental functions may be taxed unless prohibited by the state Constitution. See City of Ardmore v. State ex rel., supra, and authorities therein collected and digested.

While in this state the property belonging to municipal corporations is not subject to a property tax by virtue of section 6 of art. 10, Oklahoma Constitution, quoted, supra, we find no constitutional provision against taxing the property of private individuals who under contract with the municipality are engaged in and using their property for the purpose of carrying out an enterprise which is beneficial to a municipality in its governmental or proprietary capacity. We do not think that such a tax exemption was intended by those who framed our Constitution or wrote our laws.

The decision of the trial court being in accord with the views herein expressed, is affirmed.

McNEILL, C. J., and RILEY, GIBSON, and WELCH, JJ., concur.